**Paul H. AINSWORTH et al., appellants,**

**v.**

**OIL CITY BRASS WORKS, appellee.**

No. 4985.

Court of Civil Appeals of Texas.
Beaumont.

Sept. 23, 1954.

Keith, Mehaffey & McNicholas, Beaumont, for appellants.

John H. Benckenstein, Beaumont, for appellee.

R. L. MURRAY, Chief Justice.

The appellants, Paul H. Ainsworth, et al., bring this appeal from a judgment of the District Court of Jefferson County in favor of appellee, Oil City Brass Works, in a suit brought by such appellee against them under the declaratory judgment statute, Article 2524–1, Vernon's Texas Civil Statutes Annotated.

The Oil City Brass Works, the appellee, alleged in its petition that it operates a machine shop, non-ferrous foundry and heavy forge shop, on Lots 1 through 6, inclusive, and the North ½ of Lot 7, Lots 8 through 12, inclusive, all in Block 27 of the Van Wormer Addition to the City of Beaumont in Jefferson County, Texas; that said machine shop and foundry and heavy forge shop are situated in the industrial section of the City of Beaumont, being bounded on the north by the T. & N. O. Railroad Company and on the south by Crockett Street and the Santa Fe Railway Company; that it began operations of a machine shop, non-ferrous foundry and pattern shop in 1920 on a portion of the above land and in 1934 added a forge shop. Since 1934 it has operated on a portion of the described premises a heavy forge shop and said operations have been on a 24-hour basis continuously;

That prior to the addition of the forging shop in 1934 it purchased from C. H. Ainsworth, who was the father, husband, testator, trustee and brother-in-law of the parties named defendant, Lots Nos. 5 and 6 of said Block 27 of the Van Wormer Addition to the City of Beaumont, and that prior to and at the time of the conveyance of said lots by C. H. Ainsworth to the appellee he

knew that the same was purchased from him by the appellee to be used for a forge shop and that appellee did in 1934 establish a forge shop on the property so purchased from C. H. Ainsworth and located thereon forging hammers and from said date until the time of filing suit it had engaged in its operations and made numerous additions thereto, including additional forging hammers, all of which additions and improvements were made on said Lots 5 and 6 purchased in 1934;

That in January, 1953, appellant Paul H. Ainsworth complained to appellee of noise and vibrations coming from the appellee's business and claimed that the same invaded his property rights and threatened to bring action against the appellee to abate its operations on said premises as a nuisance and to recover damages as a result of the appellee's operations and further claimed that the land and improvements belonging to him and adjacent to appellee's property were about to be damaged by the continual operation of said plant and forging hammers; that the appellant Paul H. Ainsworth was the owner of Lots 11 and 12 of Block 26 of the said Van Wormer Addition, which premises are located south across Trinity Street from said forging shop; that Mrs. Claire Rita Ainsworth was the owner of Lots 9 and 10 of said Block 26 of the Van Wormer Addition adjoining the property of Paul H. Ainsworth above described on the east; that the appellant Mrs. Mary E. Ainsworth, individually and as independent executrix and testamentary trustee of the estate of C. H. Ainsworth, deceased, holds legal title to Lot 7 of Block 27 and Lots 1 through 6, inclusive, of Block 26 of said Van Wormer Addition and that said Lot 7 was south of and adjoining appellee's forging shop and said Lots 1 through 6 lie across the street and to the west of said forging shop; that the appellants Paul H. Ainsworth and Mary E. Ainsworth, and other parties named defendant in the suit who are not appellants here, are beneficiaries of said testamentary trustee and as such have beneficial interest in the property described above; that the property alleged to be owned by the appel-

lants having improvements thereon all of which were constructed many years ago;

That the appellants, since the beginning of its operations of its forging shop in 1934 and its many additions thereto, in particular the additional forging hammers installed in 1937 and in January, 1953, have not used its property in any unusual or excessive way or manner; that it has not necessarily caused injury or damage or harm or inconvenience to the appellants in their use and enjoyment of their property, taking into consideration the use made of both properties, by the appellants and the appellee; that its use of its premises has not been substantially offensive, discomforting and annoying to persons of ordinary sensibilities, tastes and habits living in the localities where these premises are situated;

That it has used its premises as a forging shop since 1934 and 1937 in continuous operations 24 hours a day and it is now and in the future will be impossible for it to operate its forging shop without the use of such forging hammers;

That the appellants, because of the facts alleged above and particularly because of the conveyance of said premises for a forging shop by their predecessor in interest, C. H. Ainsworth, and the continuous operation of such forging shop by the appellee without any complaint whatever by the said C. H. Ainsworth, deceased, or by the parties named defendant in the petition up to January, 1953, the appellants are now estopped to complain of the operation of such forging shop, its resultant noises and vibrations;

That the acts of which the appellants complain were and are the natural consequence of the operations of the forging shop, together with its machine shop, nonferrous foundry and pattern shop; that if the appellants have been injured and damaged, which is not admitted but denied, such alleged causes of action for invasion of their rights accrued not later than 1937, and the same is barred by the statutes of limitation of Texas; that neither the appellants nor the appellee have sought by any other

legal action to have adjudicated their respective rights resulting from the operation of its said shops and foundry, including the additional forge hammer erected in January, 1953;

The appellee prayed for a declaratory judgment of the court, determining the rights of the parties in their relation to the operation of its shops and foundry with all its additions and improvements, and that the court determine and hold that the operation of its business with the said additional forging hammer constructed in January, 1953, as not a private or public nuisance and that the appellee has not and will not invade the rights of the appellants or any of them by the continual use of its plant and business, together with the said forge hammer; in the alternative it prayed that if the court should find the appellants' rights have been invaded by the operation of its forging shop and hammers that the court hold and find that the appellants are estopped; and further in the alternative that any action on the part of the appellants for abatement or for damages be held to be barred by the statutes of limitation, and for general relief.

The appellants answered by special exception, alleging that the allegations of the petition were not sufficient to show a case which falls within the provisions of the Declaratory Judgment Act of the State of Texas, and further answered by a general denial.

The case was tried to a jury and in response to special issues submitted by the court the jury, in its verdict, found as follows:

(1) That an actual controversey did not exist between the appellee and appellants involving the operation of appellee's forge shop; (2) that C. H. Ainsworth on and before December 4, 1929 knew that the Oil City Brass Works intended to use the property which it was purchasing from him for a forge shop; (3) that vibrations have been transmitted from the forging hammers of the appellee to the property belonging to the C. H. Ainsworth Estate; (4) that such transmission of vibrations constituted a nuisance; (5) that such nuisance began in 1945 or 1946 and (6) that such nuisance has been continual from that time; (7) that such nuisance was permanent; (8) that vibrations have not been transmitted from the forging hammers to the property belonging to Paul H. Ainsworth.

Both parties moved the court for judgment on the verdict and in addition thereto the appellee moved the court to disregard the finding of the jury in answer to Special Issue No. 1, to the effect that no actual controversy existed between the parties involving the operation of the forging shop. The court granted such motion and found in its judgment that from the undisputed evidence an actual controversy did exist between the parties, and that the answer to such Special Issue No. 1 should be and was disregarded in the judgment.

The court further provided in its judgment in behalf of the appellee as follows:

"And it further appearing to the Court that the defendants' respective father, husband and predecessor in title to Lot No. Seven (7), Block 27 and Lots One (1) through Six (6), inclusive, Block 26 all in the Van Wormer Addition to the City of Beaumont, Jefferson County, Texas, in December, 1927, conveyed to the plaintiff Lots Five (5) and Six (6), Block 27 of the said Van Wormer Addition for the purpose of establishing and operating thereon a heavy forging shop, with the understanding that the plaintiff would not use said lots in a competitive business, to-wit: The piano and furniture business and the tenant house business, and that the said C. H. Ainsworth never complained of the operations of said forge shop during his life time; that the defendant, Paul H. Ainsworth, has assisted his mother, Mary E. Ainsworth, and has represented her as trustee of said property and has handled the properties of the trust estate for her; that the said defendants and Lot No. Seven (7), Block 27 and Lots One (1) through Six (6), inclusive, Block 26, Van Wormer Addition to the said City of Beaumont, had experienced vibrations and jars from the 2,000 pound, 3,000 pound and 6,000 pound hammer operated by plain-

tiff on said premises purchased from their said father and husband, continuously since 1945 or 1946; that they had been disturbed by the vibrations from such hammers since such date, continuously, day and night during regular working days; that defendants could not tell whether the vibrations came from the 3,000 pound, 6,000 pound or 8,000 pound hammer and the vibrations seemed to be as bad from one hammer as from another; that the vibrations coming from the 6,000 pound hammer were stronger and greater in intensity than the vibrations from the 8,000 pound hammer; and that the claims for injury or damages from such vibrations and for such nuisance began in 1945 or 1946, and the statutes of limitation began to run not later than the year 1946; and the plaintiff is entitled to the following declaration of rights and the same to have the force and effect of a final judgment or decree:

It is hereby accordingly ordered, adjudged and decreed that the defendants, Mary E. Ainsworth, a feme sole, individually and trustee under the will and of the estate of C. H. Ainsworth, deceased, and Paul H. Ainsworth, a beneficiary under said Testamentary Trust be and they are hereby declared estopped by the deed, knowledge and conduct of their predecessor in title, C. H. Ainsworth, late of Beaumont, Jefferson County, Texas, from complaining of the plaintiff's careful and proper construction, use and operation of a forge shop on Lots Five (5) and Six (6), Block Twenty-seven (27) of the Van Wormer Addition to the City of Beaumont, Texas, conveyed to it by the said C. H. Ainsworth, deceased;

It is hereby further ordered, adjudged and decreed that all claims of the defendants, Mary E. Ainsworth, a feme sole, individually and as trustee under the will and of the estate of C. H. Ainsworth, deceased, and Paul H. Ainsworth as a beneficiary of such Trust Estate, for nuisance presently existing and which has existed for more than two (2) years, resulting to the land and improvements hereinafter described and to themselves, from the vibrations coming from the plaintiff's forge shop and its operations, up to the date hereof, are barred by the Statutes of Limitation of the State of Texas, to-wit:

Lot No. Seven (7), Block 27, and Lots One (1) through Six (6) inclusive, Block 26, all in the Van Wormer Addition to the City of Beaumont, Jefferson County, Texas;

It is further ordered, adjudged and decreed that plaintiff have judgment against Claire (Rita) Ainsworth on her disclaimer and she is hereby dismissed with her costs;

It is further ordered, adjudged and decreed by the court that all causes of action and all parties not herein specifically disposed of, be and the same are hereby dismissed."

After the appellants' amended motion for new trial was overruled they perfected their appeal to this court for review of the judgment.

Appellants' four points on which they bring this appeal are as follows:

### "First Point

"The court erred in rendering judgment that appellants are estopped by the deed, knowledge and conduct of their predecessor in title from complaining of the plaintiff's 'careful and proper construction, use and operation of a forge shop' if this means that they are estopped to complain of new and different operations, going beyond those reasonably foreseen at the time of the conveyance to appellee.

### "Second Point

"The court erred in rendering judgment that appellants are barred by the Statute of Limitation from asserting a claim for nuisance, if this means that they are barred from asserting a claim for new and different operations in the future constituting a nuisance since the Statute begins to run only from the date of receipt of injuries resulting from such operations.

### "Third Point

"If the judgment means only that appellants are barred and estopped from com--

plaining of or asserting a claim for operations up to the date of the trial, or similar operations in the future, then the Court erred in entering judgment, since there is no controversy on this point between the parties.

#### "Fourth Point

"If the judgment is to be construed as affecting the rights of the parties if the 8,000 pound hammer is operated, then the Court erred in entering said judgment, it being a hypothetical question not subject to determination in a declaratory judgment suit, the 8,000 pound hammer not having been operated."

In their brief appellants make the following statement under the heading, "Appellants' Theory on Appeal":

"Much of the relief which was sought was not granted. The adjudication was on only two points, and there was not a great deal of controversy on either of these two points. It might appear, therefore, that appellants should not seriously complain of the judgment. This appeal is being perfected, however, because of a possible misconstruction of the judgment to appellants' prejudice at a later time. Appellants feel that appellee will take the position that the judgment gives them a right to operate the 8,000 pound hammer, regardless of the consequences, and that appellants are barred by the judgment from a recovery of damages or an injunction restraining such operations. It is to remove such a misconception that this appeal is perfected.

"Appellants most assuredly do intend to seek whatever redress the law may give them if the operation of the 8,000 pound hammer, or any other operation, constitutes an invasion of their legal rights.

"The judgment provides that appellants are estopped from complaining of the 'careful and proper construction, use and operation of a forge shop' on the property conveyed to appellee by C. H. Ainsworth. If this merely means that appellants cannot complain of the operations which were within the contemplation of the parties at the time of the transfer, or those which

were conducted during the lifetime of C. H. Ainsworth or even up to the time of the trial, then there is no controversy on this point. If, however, it means that appellants are forever barred from complaining of *any* operations, regardless of how detrimental to their property they might be, then this judgment goes too far and should be reformed.

"Similarly, in the adjudication as to the barring of any claim as a nuisance 'presently existing and which has existed for more than two years,' if this means that appellants would be barred from asserting a claim for damages resulting from any operations which existed *to any extent* at the time of the trial and which had existed for two years prior thereto, regardless of whether they caused damage before or not, then again the judgment goes too far and should be reformed.

"Stated differently, if the judgment means that appellants are estopped and forever barred from any further complaint as to the operations on appellee's property, and that appellee is in effect given a non-revocable license to cause as much damage as it may wish in the future by new and more injurious operations, then it is erroneous and should be changed. If, on the other hand, it merely means that appellants are estopped and barred from asserting a claim for operations similar to those which had been conducted up to the date of the trial, then there is no controversy and appellants should not be cast in judgment in a suit under the Declaratory Judgment Act.

"In other words, if the judgment means that appellants are barred from future complaints for future conditions different from those in the past, regardless of their nature, it is wrong. If it means that appellants are barred from complaints as to conditions which existed prior to the date of the trial, there is no controversy, and the judgment should be reversed and the suit dismissed.

"If the judgment merely means that appellants are estopped from complaining of the operations of the type contemplated by their predecessor in title, and are barred by the Statute of Limitation from asserting a

claim on account of operations causing damages which have already existed for more than two years, then the judgment should be reversed, since there is no controversy on which a declaratory judgment can be based."

We first consider whether the trial court was correct in finding that from the undisputed evidence a justiciable controversy between the parties was presented. The appellee was operating and had been operating for many years its machine shop, foundry, brass works and forge shop on property in the City of Beaumont adjacent to the property of the appellants. The property on which its forge shop and forging hammers are located and operated was purchased from Mr. C. H. Ainsworth during his lifetime and C. H. Ainsworth was the predecessor in title of the appellants. It was within the knowledge of C. H. Ainsworth at the time he conveyed the property to the appellee that it would be used for the purpose of locating and operating thereon a forge shop with forge hammers. Forging hammers were operated on said property so purchased for several years and such operation caused an appreciable amount of vibrations to the surrounding properties, including that of the appellants. No complaint of such operations was made by C. H. Ainsworth during his lifetime. He died in 1945 or 1946. Since that time the appellant Paul H. Ainsworth, having an interest in the properties formerly owned by his father, C. H. Ainsworth, has been in charge of his and his mother's interest in such properties. He complained to the President of the appellee company about vibrations coming from the forging hammers on appellee's property when a larger size hammer was being installed by the appellee in December, 1952. He also complained to him about vibrations for the past several years, stating that he was going to do something about such vibrations. Also, an attorney representing him called an officer of the appellee company and made some complaint about the vibrations which were affecting the Ainsworth properties. After the introduction of the testimony had progressed for some time on the trial of the case counsel for the appellants stated to the court in the nature of a trial amendment dictated into the record that "Mr. Ainsworth and his mother will disclaim any complaint about the operation of the shop prior to the 8,000 pound hammer installation, and for the sake of the record I would like to amend my general denial to that extent, by making the judicial admission that we do deny their right or any of their allegations with reference to the operation of the 6,000 pound hammer." No trial amendment was filed, however, and we regard the above statement as a judicial admission on the part of the appellants. The parties were in thorough disagreement, however, as to their respective rights in regard to the operation of the newer forging hammer in December, 1952, called the 8,000 pound hammer. Appellants maintain, as will be observed from the above statements quoted from their brief, that the issues between the parties as to the effect of the operation of the 8,000 pound hammer and the right of the appellee to operate it had not fully matured and would not mature unless and until their property became more seriously damaged than it had been by such operations in the past; that as to such 8,000 pound hammer therefore no justiciable controversy was presented.

■ The appellee contends and the appellants do not contend otherwise that jurisdiction is a matter for determination by the court and not by the jury. Jurisdiction, the duty and power of the court to act, does not depend upon the petition stating the cause of action. The determination of this question is conferred upon the court. Zamora v. Zamora, Tex.Civ.App., 241 S.W.2d 635. If the facts in the case present such a controversy it is the duty of the court to decide whether a justiciable controversy is presented. The uniform declaratory judgment act, Article 2524-1 Vernon's Civil Statutes of Texas Annotated, was passed by the Texas Legislature in 1943, and since that time litigants in this state have availed themselves of such statute to determine rights thereunder. It is not necessary that a person who seeks a declaration of rights under this statute shall have incurred or caused damage or

injury in a dispute over rights and liabilities, but it has frequently been held that an action for declaratory judgment would lie when the fact situation manifests the presence of "ripening seeds of a controversy." Such appear where the claims of several parties are present and indicative of threatened litigation in the immediate future which seems unavoidable, even though the differences between such parties as to their legal rights have not reached the state of an actual controversy. Borchard on Declaratory Judgments 41–42; McDonald Texas Civil Practice (Sec. 2.05).

Borchard on Declaratory Judgments says:

"By 'ripening seeds' the court meant, not that sufficient accrued facts may be dispensed with, but that a dispute might be tried at its inception before it has accumulated the asperity, distemper, animosity, passion and violence of a full blown battle which looms ahead. It describes a state of facts indicating 'imminent' and 'inevitable litigation'. The dispute by declaration may be determined before the status quo has been altered by physical acts of either party. When a tenant contends that he is privileged to tear down a leased building and the landlord denies that privilege, material interest being at stake, the controversy is real and actual and not hypothetical, though the building has not yet been touched. When two persons in interest dispute as to their right to property, to public office, to a right-of-way, to a personal status, to a lien, to a privilege to act under an existing instrument of law, to immunity from adverse claims, the controversy is actual and fully matured, although no violence or trepass has yet been committed by either party. Such controversies 'ripe' for decision, as soon as the court is convinced that the antagonism is genuine and that the court's judgment will conclusively determine the issues involved. Perhaps the principal contribution that the Declaratory Judgment Act has made in the philosophy of procedure is to make it clear that a controversy as to legal rights is as fully determinable before as it is after one or the other parties have acted on his own

view of his rights and perhaps irretrievably shattered the status quo. Such violence and destruction make the issue more painful and socially undesirable, but they do not make it any more controversial. The controversy was ripe for decision before the violence and destruction had begun."

Also, as stated in Anderson on Declaratory Judgments, Volume 1, Sec. 221:

"However, it might be said that the rights to be determined by a declaratory judgment or decree, as a general rule may be, and perhaps usually are rights not in praesenti, but rights which are to come into full fruition or rights which will be fully vested at some future time. Therefore, in a proper case, if uncertainties and controversies arise between interested parties as to what their respective rights will be and which have accrued or become vested, and to avoid needless hazard or possible losses, it is necessary to presently have a decision of such uncertain or controverted rights, then there is an actual need of and justification for a declaratory adjudication. Otherwise, there is no present controversy in the true sense and no need of and justification for a declaratory adjudication. If the parties will not be subjected to law or the rights impaired by the institution of a proceedings, after the alleged rights accrue rather than resorting to declaratory proceedings prior to the actual accrual of such rights, there is no justification for asking a declaratory judgment or decree in the advance of the accrual of such rights.

"This situation should be distinguished from what has been said with respect to the granting of declaratory relief with respect to future rights. A present right will be declared although the infringement of such right may not arise until a future time.

"* * * the courts have, when a proper case was presented, adjudicated rights having many of the characteristics of existing in the future, where all of the parties who could be possibly interested were before the court and contractual relations may be declared, notwithstanding the fact

that they involve a consideration and adjudication of a future right, depending to some extent upon a contingency.

"It is a general rule, long established that an action for a declaration of rights and legal relations, serves a legitimate purpose, where all persons who are interested or might be affected by the enforcement of such rights and legal relations and who might question in a court, the existence and scope of such rights are parties to the action and have an opportunity to be heard."

We think from the facts stated, above and authorities quoted from the ripening seeds of a controversy are apparent here. The appellee did not wish to continue the operation of its forging hammers, over the complaints of Mr. Paul Ainsworth and after a call from Mr. Ainsworth's attorney in regard thereto, while facing the possibility of a suit for damages when damages had accrued. It was not required to wait until then and seek relief by a declaratory judgment. We believe that the provisions of the Declaratory Judgment Act were available to it and that the trial court properly took jurisdiction of the suit and entered judgment therein.

The contentions of the appellants as set forth both in their points on appeal and their statements in their brief called "Appellants' Theory on Appeal" indicate that their primary concern in regard to the judgment of the trial court is fear of a present adjudication against them of all rights which they may have in the future arising out of the operation of the 8,000 pound hammer, or other hammers or machinery, in the event it causes greater damage in the future than has been caused in the past. They view the effects of the judgment as being uncertain as to those rights and accordingly make complaint of it. It is noted that by the terms of the judgment appellants are declared to be estopped by deed, etc., from complaining of the appellee's *careful and proper construction, use and operation of a forge shop*. These latter words in the judgment we believe to be clear and unambiguous, when considered in the light of the prior recitations and findings in the judgment itself. They mean, in effect, that the appellee acquired the right to operate on the land purchased from C. H. Ainsworth a forge shop and such other hammers and machinery as are ordinarily operated in connection with such a business or shop, so long as such installation and operation is done carefully and properly, that is, without negligence. The amount of the damage which the property of appellants might suffer in the future would not be a determining factor in deciding whether appellants will have a cause of action against the appellee for such damages or injuries caused by the operation of the appellee's forging plant or any of its hammers, large or small. The determining facts or factor in such an event would be the method and manner of installation, use and operation of such hammers and other machinery on the property by the appellee. This judgment declares the rights of both parties as to the future operation and use of the forge shop and its hammers and when viewed in connection with the findings and recitations in the judgment we think it is plain and unambiguous.

The appellants, by their judicial admission above referred to and their contentions in their brief as above set forth, seek to divide the present controversy between the parties into two separate controversies, first as to the rights of the parties as fixed by all the events in connection with the operation of the forge shop hammers up to the time of the trial of the case, and second as to the rights of the parties in connection with the operation in the future of the 8,000 pound hammer on the property of the appellee. We do not believe that the dispute between these parties can thus be divided into two disputes. We regard it as one controversy. The appellee, as plaintiff, brought its suit and introduced its facts before the trial court in furtherance of its contention that the appellant Paul Ainsworth had made complaints about the past

operation of its hammers and its effect on the adjoining Ainsworth properties and would in all likelihood complain in the future about the operation of such hammers, and would probably sue it because of such damages as might accrue. The whole controversy was thus brought before the trial court on the same principles of law which pronounced the relative rights of the two parties both as to the past and future operations of the hammers in the forge shop. These principles of law likewise fixed the rights of the parties as to the future operations of the hammers, large and small, on the property with its attendant effects on the adjacent land of the appellants.

The appellee is not given a free and untrammeled license to operate its hammers in a negligent manner in the future, to the harm of the property of the appellants. This apprehension is expressed by the appellants in the opening statement in their brief. This apprehension is groundless in our opinion. The appellee has been declared only to have the right to operate the 8,000 pound hammer and other machinery in the future carefully and properly.

The evidence in the case is lengthy and describes in detail past operations of the forge shop and its effects on the surrounding properties. A detailed and technical description is given of the methods of installation of the large hammer in the forge shop. A description of the nature of surrounding properties and the improvements thereon is given. Briefs of the parties are extensive and contain many citations and quotations and authorities. There is no serious controversy either over the facts, or the law in regard to declaratory judgments. The basic difference between the parties, as we have indicated above, lies in their discordant views as to the effect of the judgment appealed from. We think that all of the contentions raised in the four points of the appellants are decided against them in our holdings above and they are overruled without an individual discussion of each one.

We do discuss the appellants' first point in which they contend that even though Mr. C. H. Ainsworth knew at the time he conveyed the property to the appellee that it would be used in operating a forge shop thereon with its attendant machinery and hammers, he nevertheless did not and could not have foreseen that a hammer as large as 8,000 pounds would be operated thereon and would cause as much damage to his adjacent property as eventually did develop, and the appellants are therefore not estopped. We believe that the trial court properly held that the appellants are estopped to complain of the appellee's ordinary, careful, and prudent installation and use of the forging plant on that property, and that it was then in contemplation of the parties that whatever type of machinery or hammers would ordinarily be used in such a forge shop in the future was legally within the contemplation of the parties. The appellee would certainly not be required to continue to operate its forge plant with the same type of machinery and the same size hammers which it had and was using in 1929 at the time the property was bought from C. H. Ainsworth. It was naturally to be expected and contemplated that when the appellee bought the property and acquired thereby under the facts before us the right to operate thereon a forging shop, it could thereafter operate whatever type of machinery and hammers the growth of its business and the development of the industry in which it was engaged would require it to use in the course of its business. See: Houston & E. T. Railway Co. v. Adams, 58 Tex. 476; Crawford v. Magnolia Petroleum Co., Tex. Civ.App., 62 S.W.2d 264; Marvel Wells, Inc. v. Seelig, Tex.Civ.App., 115 S.W.2d 1011; State of Texas v. Brewer, 141 Tex. 1, 169 S.W.2d 468.

The judgment of the trial court is affirmed.